[Civ. No. 19595.   Second Dist., Div. One.   Feb. 24, 1954.]

Estate of JOSEPH A. VALENTINE, Deceased. FRANK J. VALENTINE et al., Appellants, v. KATHERINE L. VALENTINE et al., Respondents.

William J. Clark for Appellants.

McGinley & Hanson for Respondent Katherine L. Valentine.

WHITE, P. J.—Joseph L. Valentine died on May 18, 1949. He was survived by a son and by his widow, Katherine L. Valentine, who is the respondent herein, and also by his parents, Frank and Mamie Valentine, the appellants. The decedent left a holographic will which was admitted to probate.

The appellants attack three decrees of the Superior Court of Los Angeles County, sitting in probate, in the estate of the decedent: (1) a decree determining what part of decedent's estate constitutes his separate property and what part constitutes community property; (2) a decree determining the parties entitled to distribution of the estate; and (3) an "order and judgment setting apart probate homestead, no selection having been made during lifetime of decedent, and setting apart exempt property to surviving spouse."

The decedent and respondent, Katherine L. Valentine, were married in October, 1942. The marriage was an unhappy one, marked by frequent quarrels and separations. In March, 1946, husband and wife entered into a property settlement agreement and in May, 1946, the wife secured an interlocutory judgment of divorce in the Superior Court of Los Angeles County, the court approving the property settlement. When the time for entry of the final judgment of divorce arrived, in May, 1947, the wife opposed the entry upon the ground that there had been a reconciliation and that she had borne a child, of whom decedent was the father. The motion of the defendant (decedent) for entry of the final judgment of divorce was heard upon affidavits and counteraffidavits by the parties and others, and was denied, the court finding that there had been a reconciliation. Thereafter the wife brought an action for declaratory relief, asking to have the property settlement declared invalid upon the ground that there had been a reconciliation and cohabitation, and that following the reconciliation the parties had treated the property settlement as abrogated. The decedent filed an answer to the wife's complaint. In March, 1948, there was filed with the clerk of the superior court in said last-mentioned action a stipulation, reciting that the parties had "resumed full marital relationship and are residing at their home . . . with their son, Joseph Henry Valentine, age one year," acknowledging that the property settlement "has been mutually rescinded, dissolved and set aside," and asking that the court "enter its order setting aside and rescinding the said agreement." This document was executed by both the husband and wife and by

their attorneys. A judgment in accordance with the stipulation was entered.

The holographic will executed by the decedent reads as follows:

> "Aug 9 - 1948
> Monday 2:15 P M
> 10380 Glenbarr Ave
> L A 34 Calif

"I Joseph A Valentine of sound mind and of my own free will make out the following will in the event of my death.

"My home at 10380 Glenbarr Ave L A 34 which I built and paid all expenses for before marring Katherine Louis Schramm Valentine on Oct 8- 1942. and who divorced me in the Courts of Los Angeles in May of 1946. All the home furnishings including all nick nats and my home at 12000 Weddington Ave North Hollywood which I purchased previous to marriage to Katherine Louise Schramm Valentine including all furnishings I leave all this to my Mother & Father namely Mr. & Mrs. Frank Valentine who reside at 12000 Weddington Ave North Hollywood. My personal belongings such as my 1940 La Salle, all my jewelry and clothes I also leave this to my Mother & Father.

"PART II

> Aug 9- 1948
> Monday
> 10380 Glenbarr Ave
> . L A 34 Calif.

"My Metropolitan Life Insurance of 3 policies I leave $5,000 to my wife Katherine Louis Schramm and $10,000 Ten Thousand to Catherine King Koster who now resides at 1143 No Doheny Los Angeles Calif one of the policies has double indemnity if I am killed any accident. I do expect my Mother & Father to pay all my outstanding debts.

"My Camera equipment which consists of a Mitchell Camera B. NC and investment of $9000$^{00}$ plus all my other Cameras projectors and Camera excessories I leave this to Catherine King Koster.

"My policy of 10,000 Ten Thousand with New England Mutual Life Insurance is left to my Son Francis Joseph Valentine also all cash thats in the bank plus my bonds I leave to my Son (Francis) Joseph Valentine

### III

"I do expect that my Mother & Father and also Catherine King Koster in the event my Son Joseph Francis Valentine needs financial help that they will see to his and only his needs.

"Of sound mind and good health this 9th day of August 1948.

"this is my will

Joseph A Valentine"

The decision of the trial court which resulted in the decrees here appealed from was arrived at after receiving evidence at a consolidated hearing upon three petitions. (1) The petition of Frank and Mamie Valentine (parents of decedent) for a determination of the parties entitled to distribution of the estate, wherein the petitioners claimed to be entitled to distribution of the real property on Weddington Avenue, North Hollywood, the real property at 10380 Glenbarr Avenue, Los Angeles, the La Salle automobile and jewelry, all of which it was alleged was the separate property of decedent. The petitioners also claimed all other personal property of the estate, including the proceeds of the three Metropolitan life insurance policies with the exception of the portions specifically bequeathed to the wife and to Catherine Koster (see will) and the camera and accessories. It was alleged that it was necessary for the court to ascertain what property was community and whether or not the property settlement of March, 1946, was effective at the time of the death of the decedent. Petitioners also sought determination of the meaning of the language of decedent in his will, "my personal belongings such as my 1940 La Salle, all my jewelry and clothes I also leave this to my Mother & Father"; the sentence, "I do expect my Mother & Father to pay all my outstanding debts,"; and the language in the same paragraph making specific bequests of portions of his life insurance.

(2) Katherine L. Valentine, the widow, filed a petition for an order setting apart as a probate homestead the property at 10380 Glenbarr Avenue, which had been appraised at $32,500, and certain furnishings necessarily used in the occupancy of the property. In this petition it was alleged that although the real property and some of the furniture were the separate property of the decedent at the time of his marriage, "substantial community earnings" were paid toward reducing an encumbrance thereon.

(3) Katherine L. Valentine also filed a petition to determine what part of decedent's estate constituted his separate property and what part constituted community property, and to determine her interest therein, claiming to be entitled to distribution of all the community property except as to one-half thereof which decedent might have disposed of by will, and one-half of his separate estate not disposed of by will and not subject to payment of his debts and costs of administration.

Objections and answers to these petitions were filed.

The hearing before the trial court also embraced evidence addressed to the issues presented by the petition of appellants for letters testamentary, contest of will by Katherine Valentine, and petition by Katherine Valentine for family allowance.

Appellants present 16 points upon appeal, but their contentions may be properly considered solely as an attack upon the sufficiency of the evidence to support certain findings made by the trier of fact. Appellants argue that the property settlement was not abrogated by oral agreement and that the testimony of the wife, Katherine Valentine, was "without probative effect." That the wife's conduct was inconsistent with a belief on her part that the property settlement had been cancelled, and that her testimony, as to admissions of one who is dead, is "the weakest and least satisfactory" (citing Code Civ. Proc., § 1879). That the settlement could not be rescinded by oral agreement or reconciliation. That the complaint for declaratory relief which resulted in a stipulated judgment voiding the settlement did not set forth a justiciable controversy; that the stipulation was obtained by undue influence and extrinsic fraud; that the property settlement had been incorporated in the interlocutory decree and could not be set aside by agreement or by judgment in the declaratory relief action. Appellants also attack the court's construction of the holographic will of decedent.

The trial court found, upon substantial evidence, that the property settlement agreement had been cancelled, rescinded and set aside during the lifetime of the decedent. Appellants contend that the property settlement "continued effective" to the time of decedent's death, and that such fact "is decisive of all the major issues involved in these three appeals." The trial court had before it not only the testimony of respondent wife as to a reconciliation, but the written stipulation of March 2, 1947, rescinding the agreement, and the judgment entered pursuant to the stipulation. Appellants' contentions

424

amount to no more than an attack upon the credibility of the testimony of respondent wife, based upon asserted inconsistencies in her statements and conduct. ■ Nothing is more firmly settled than the rule that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings of the trier of fact. (*Estate of Bristol*, 23 Cal.2d 221, 223, 224 [143 P.2d 689].) Despite the presence of testimony which might be deemed impeaching or contradictory of the wife, the trial court had before it the facts that the decedent by his will acknowledged paternity of the wife's child and executed a stipulation for rescission of the property settlement, as well as substantial evidence that husband and wife had resumed marital relations after the entry of the interlocutory decree (the superior court in the divorce action having found that there was a reconciliation), and that the parties had orally agreed upon a cancellation of the property settlement. ■ Whether by the reconciliation the parties intended to terminate the settlement presented a question of their intent, a question of fact (*De Vault* v. *De Vault*, 90 Cal.App.2d 15, 16 [202 P.2d 375]). This issue was resolved against appellants, and under well settled rules the decision of the trial court may not be disturbed on appeal.

■ There is no merit to the contention that the parties could not rescind the settlement because it had been incorporated in the interlocutory decree. The settlement was not incorporated in the decree, but was merely approved, and no final decree was ever entered. ■ Nor is there any merit or pertinence to the contention that the complaint in the declaratory relief action did not present a justiciable controversy. The facts were that the husband sought entry of the final decree and the wife opposed it on the ground that there had been a reconciliation and rescission of the settlement. There was thus presented a justiciable controversy as to whether the parties had by reconciliation rescinded their property settlement.

■ The attack upon the judgment voiding the property settlement on the ground that the stipulation therefor was obtained through undue influence may not be sustained. Not only is such a collateral attack upon a final judgment untenable (*Nielsen* v. *Emerson*, 119 Cal.App. 214, 217, 219 [6 P.2d 281]; *Henderson* v. *Henderson*, 85 Cal.App.2d 476, 479 [193 P.2d 135]; 49 C.J.S. 315, 50 C.J.S. 55), but the issue of undue influence was concluded by the decision and findings of

the trier of fact upon conflicting evidence. It is true that the decedent had been drinking heavily for many years, but there was also competent evidence that during the period in question he was rational. There was slight, if any, substantial evidence that the decedent was subjected to "undue" influence which impelled him to execute the stipulation for judgment cancelling the settlement.

The trial court interpreted the will of decedent as follows:

The language reading "My personal belongings such as my 1940 La Salle, all of my jewelry and clothes I also leave this to my mother and father," was interpreted as leaving to his parents the described property, with the exception of certain articles of personal property which the wife claimed had been given to her by her husband and constituted her separate property. The argument of appellants with respect to the asserted gifts amounts to no more than an attack upon the credibility of the respondent wife's testimony and upon the validity of the inferences drawn therefrom by the trial court. The credibility of the wife's testimony and the inferences to be drawn therefrom in the light of all of the circumstances presented problems addressed to the trier of fact, and it cannot be held that his findings are without substantial support.

The trial court determined that with respect to decedent's debts and his life insurance policies, the decedent meant by the language of his will that his parents should pay his outstanding debts; that the wife receive $5,000 and Catherine Koster $10,000 from the proceeds of the Metropolitan policies, and that his parents receive only his (decedent's) interest in the remaining portion of the proceeds, but that his parents' share should be subject to the payment of his debts, whether matured or not; and further, that the $5,000 and $10,000 bequests should be paid out of decedent's one-half portion of the insurance proceeds. The court further found that one-ninth of the insurance proceeds constituted his separate property and eight ninths thereof community property, and the wife was entitled to her community interest therein, or four-ninths.

Assuming that a construction other than that adopted by the trial court might be arrived at, nevertheless, it cannot be said that the trial court's construction was unreasonable, and furthermore, as heretofore pointed out, this court is powerless to disturb findings and conclusions arrived at by the duly

constituted arbiter of the facts when there is any evidence, contradicted or uncontradicted, of sufficient substantiality to support the determination so made.

The decree determining parties entitled to distribution filed April 2, 1951, and entered in Book 20, page 99, of Probate Orders and Decrees; the order and judgment setting apart probate homestead, filed April 2, 1951, and entered in Book 20, page 141, of Probate Orders and Decrees; and the decree determining what part of decedent's estate constitutes separate property and what part community property, filed April 2, 1951, and entered in Book 20, page 63, of Probate Orders and Decrees, are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 8, 1954, and appellants' petition for a hearing by the Supreme Court was denied April 21, 1954. Schauer, J., was of the opinion that the petition should be granted.